UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH BRAGA, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>INTERSEC INTERACTIVE, INC.,<br><br>    Defendant. | Case No. 15-cv-01145-DMR<br><br>**ORDER DENYING MOTION TO DISMISS AND/OR MOTION TO TRANSFER VENUE**<br><br>Re: Dkt. No. 21 |

Defendant Intersec Interactive, Inc. has filed a motion to dismiss and/or motion to transfer venue pursuant to Federal Rule of Civil Procedure 12(b)(3), 28 U.S.C. § 1406(a), 28 U.S.C. § 1404(a), and/or the doctrine of *forum non conveniens*. [Docket No. 21.] According to Defendant, the forum selection clause in Plaintiff Sarah Braga's employment contract requires that this case be litigated in a New York court. Having considered the parties' written submissions as well as oral argument, the motion is **denied.**

## I. BACKGROUND[1]

### A. Facts About Plaintiffs' Claims

Plaintiffs Sarah Braga and Matthew Cottone worked on and off for Defendant's pornography business in Oakland, California over a number of years. FAC at ¶¶ 2, 7. According to Plaintiffs, Braga worked "as a producer of adult content and occasionally as an erotic

---

[1] In a motion to enforce a forum selection clause or a motion to dismiss pursuant to Rule 12(b)(3), "pleadings need not be accepted as true, and facts outside the pleadings may be considered." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009). Thus the court summarizes facts alleged in the First Amended Complaint ["FAC," Docket No. 16] as well as facts outside the pleadings.

performer" from October 2011 through October 19, 2014. Braga Decl. [Docket No. 22-1] at ¶ 2. Cottone worked "as a producer of adult content and occasionally as an erotic performer" from 2003 to 2006, 2008 to 2009, and October 2012 to February 2014. Cottone Decl. [Docket No. 22-2] at ¶ 2.

Plaintiffs allege that Defendant misclassified them as independent contractors instead of employees. They assert employee status for the following reasons: they were expected to be at work at a specific time and place every day; they used Defendant's equipment, including office space, cameras, computers, software, and props; their employment with the company was open-ended, but they could be terminated at will and without cause; and they were not engaged in their own distinct occupation or business but instead they performed a variety of tasks, all of which were part and parcel of Defendant's regular business. *Id.* at ¶¶ 9, 11. Braga also alleges that Defendant terminated her employment because she told Brent Scott, who is Intersec's primary owner, that co-owner Daniel Intraub was engaging in inappropriate sexual activity with a minor. *Id.* at ¶ 14-16.

Both Plaintiffs assert claims under California law for failure to pay wages, failure to pay overtime wages, waiting time penalties, and violation of the Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200 *et seq*. *Id.* at ¶¶ 23-28, 31-34. Both Plaintiffs seek a declaratory judgment that Defendant's conduct is unlawful. *Id.* at ¶¶ 38-39. Braga brings claims for failure to provide accurate wage statements in violation of Cal. Labor Code § 226(a), and for retaliation. *Id.* at ¶¶ 29-30, 35-37. Plaintiffs also bring claims for civil penalties pursuant to the Private Attorneys General Act of 2004 ("PAGA"), Cal. Labor Code § 2698 *et seq.*, on behalf of PAGA members defined as "[p]ersons who worked for Defendants as non-exempt, hourly-wage employees any time during the one year plus thirty-three days prior to the filing of this First Amended Complaint ("FAC") until final judgment is entered." *Id.* at ¶¶ 19-21. Plaintiffs seek civil penalties based on Cal. Labor Code § 2699(f) and § 210 for Defendant's failure to pay all wages due to Plaintiffs and the PAGA members; Cal. Labor Code § 558(a) for Defendant's failure to pay overtime compensation to Plaintiffs and the PAGA members; Cal. Labor Code § 226.3 for Defendant's failure to provide accurate wage statements to Plaintiffs and the PAGA members; and Cal. Labor

1  Code § 226.3 for willful misclassification of Plaintiffs and the PAGA members. *Id.* at ¶¶ 40-44.

2  Plaintiffs assert that this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332
3  because the parties are all citizens of different states and the amount in controversy exceeds
4  $75,000. *Id.* at ¶ 6.

### B.  Facts Related to Venue and Forum

#### 1.  Residence of Parties

The parties agree on some but not all of the facts about their places of residence. The parties agree that Defendant is a New York corporation that operates in California. FAC at ¶ 2; Scott Decl. at ¶ 6. Plaintiffs contend that throughout their employment, Defendant's only office was in Oakland. Braga Decl. at ¶ 6; Cottone Decl. at ¶ 6. Defendant does not dispute that it had an office in Oakland, but argues that it had others as well. Scott Decl. at ¶ 6 ("Defendant … operates in New York and California."). Defendant avers that it maintained an office in Brooklyn "until 2011,"[2] and in Manhattan from 2011 until September 2012, at which point the office was moved to Queens. *Id.* at ¶ 6.

According to Defendant, Scott's primary residence in Hamden, New York has also served as one of Defendant's offices since 2003.[3] Montalbano Decl. at ¶¶ 5-6. Defendant avers that it maintained a "company apartment" in Emeryville, California during the period at issue in the FAC up until March 2015; the apartment "was rented for the purpose of convenience as providing housing for performers" and Scott was allowed to use that apartment in his capacity as owner. Intraub Decl. at ¶ 5. Plaintiffs assert that the Emeryville apartment and Hamden house are simply Scott's primary and summer residences, respectively. Braga Decl. at ¶ 8. In addition, Plaintiffs assert that Intraub had his only residence in San Leandro, California. *Id.* at ¶ 9.

Plaintiffs allege that at all relevant times they were residents of California. FAC at ¶ 1.

---

[2] It is not clear when Defendant opened its Brooklyn office.

[3] Plaintiffs admit that during the course of any given year, Braga spent two to three weeks and Cottone spent six to eight weeks during the summer at Scott's residence in Hamden, New York. Braga Decl. at ¶ 5; Cottone Decl. at ¶ 5. No further details were provided with respect to what each Plaintiff was doing (i.e., whether they were working) at Scott's residence during that time.

3

1 Defendant contends that Braga was a resident of Oregon "when she first began contracting with
2 Intersec, and remained as such for some time after her contract began." Montalbano Decl. at ¶ 4.
3 Braga currently resides in Oakland and Cottone resides in Portland, Oregon. Braga Decl. at ¶ 7;
4 Cottone Decl. at ¶ 7. Plaintiffs both contend that they "have limited means and cannot afford to
5 litigate across the country in New York," and are both currently unemployed. Braga Decl. at ¶ 10;
6 Cottone Decl. at ¶ 10.

### 2. Contract Terms

Braga executed an "independent contractor agreement" on February 5, 2013. Scott Decl. [Docket No. 21-1] at ¶ 2 Ex. A (Braga Agreement). The Braga Agreement states that Defendant "agrees to engage Independent Contractor [i.e., Braga] to provide services as a Videographer - Post Production - Executive Assistant - Prop Designer/Developer - Handler." *Id.* at ¶ 1. Paragraph 15 of the Braga Agreement states:

> This Agreement shall be governed by and construed in accordance with the laws of the state of New York. The parties agree to submit all disputes arising out of or in connection with this Agreement to the exclusive jurisdiction of the state or federal courts located in New York County, State of New York.

*Id.* at ¶ 15.

The Braga Agreement is signed by Scott and Braga. Defendant contends that "Braga signed the [Braga Agreement] of her own free will and made no statements with respect to any negotiation. Though she was asked if she accepted it, she made no protests." Intraub Decl. at ¶ 9. Braga counters that after she had already been working for Defendant for about a year, Defendant "demanded" that she sign the Braga Agreement, "conditioned [her] continued employment on my signing the agreement" and "proffered the agreement on a take-it-or-leave-it non-negotiable basis." Braga Decl. at ¶ 13.

Defendant contends that on November 13, 2012, Cottone, acting on behalf of The Digital Dark LLC, submitted a "proposal to carry out independent contractor work." Scott Decl. at ¶ 4 Ex. B. Defendant points to this as evidence that Cottone was in fact an independent contractor, but the document appears to have no bearing on the venue question now before the court. The document is not signed by Cottone or any other individual.

4

### 3. **Place of Employment**

Braga contends that she "performed over ninety percent of [her] work for Defendant in Oakland." Braga Decl. ¶ 4. Similarly, Cottone states that "during [his] most recent stint with Defendant, [he] performed over ninety percent of [his] work for Defendant in Oakland." Cottone Decl. ¶ 4. Braga "was expected to be physically present in the Oakland office at a specific time every day during the workweek," although once Braga began working on the Topgrl website in March 2014, Defendant provided Braga with a laptop and she was able to do some editing work from home (but she was still expected to work primarily from the Oakland office). Braga Decl. at ¶¶ 11, 17.

As noted above, Braga and Cottone each spent a number of weeks per year during the summer at Scott's residence in Hamden, New York. Braga Decl. at ¶ 5; Cottone Decl. at ¶ 5. The complaint does not specify whether Plaintiffs seek redress for any acts occurring in New York.

## II.   LEGAL STANDARDS

Defendant styles this as a motion to dismiss for improper venue, a motion to transfer venue, and/or a motion to dismiss for *forum non conveniens*,[4] and cites a mishmash of Federal Rules and laws on venue and forum. The court lays out the legal standards for these various concepts below, citing to the Supreme Court's recent case on this exact issue, *Atlantic Marine Construction Co. v. United States District Court,* -- U.S. --, 134 S.Ct. 568 (2013).

### A.   Motion to Dismiss for Improper Venue under Rule 12(b)(3) and 28 U.S.C. § 1406

Venue is proper for a civil action when it is brought in

---

[4] "Forum non conveniens is a common law doctrine that allows a court having jurisdiction over the subject matter and the parties to decline to exercise its jurisdiction where litigation in the forum would be seriously inconvenient for one of the parties, and a more convenient forum is available elsewhere." *Nibirutech Ltd. v. Jang,* -- F.Supp.3d --, No. C 14–3091 PJH, 2014 WL 6790031, at *4 (N.D. Cal. Dec. 2, 2014) (quoting Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (2014 ed.) § 4:835)). "[T]he appropriate way to enforce a forum selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atlantic Marine*, 134 S.Ct. at 580. The forum selection clause at issue here requires disputes arising out of the Braga Agreement to be litigated in *either* "the state or federal courts" of New York County. Defendant moves to transfer the case to the federal court in the Southern District of New York, rather than a New York state court, so the doctrine of *forum non conveniens* does not apply.

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

"When venue is challenged, the court must determine whether the case falls within one of the three categories set out in [Section] 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under [28 U.S.C.] § 1406(a)[5]" or Federal Rule of Civil Procedure 12(b)(3). *Atlantic Marine*, 134 S.Ct. at 577.

"[V]enue is proper so long as the requirements of § 1391(b) are met, irrespective of any forum selection clause …." *Id.* at 578. "Whether the parties entered into a contract containing a forum selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." *Id.* at 577. Therefore, Section 1406(a) and Rule 12(b)(3) "are not proper mechanisms to enforce a forum selection clause." *Id.* at 580. Instead, "[Section] 1404(a) and the *forum non conveniens* doctrine provide appropriate enforcement mechanisms." *Id. See also T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, -- F.Supp.3d --, No. 14-CV-05318-JSC, 2015 WL 1289497, at *7 (N.D. Cal. Mar. 20, 2015) (same); *Nibirutech*, -- F.Supp.3d --, 2014 WL 6790031 at *1 (same).

**B. Motion to Transfer under 28 U.S.C. § 1404(a)**

Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Section 1404(a) "does not condition transfer on the initial forum's being 'wrong' … [a]nd it

---

[5] Section 1406(a) of Title 28 of the United States Code states, "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

6

permits transfer to any district where venue is also proper … or to any other district to which the parties have agreed by contract or stipulation." *Atlantic Marine*, 134 S.Ct. at 579.

"In the typical case not involving a forum selection clause, a district court considering a [Section] 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations. Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Id.* at 581 (quoting Section 1404(a)).

However, "the calculus changes … when the parties' contract contains a valid forum selection clause." *Id.* Such a clause "represents the parties' agreement as to the most proper forum" and its enforcement "protects their legitimate expectations and furthers vital interests of the justice system." *Id.* at 582 (quotations omitted). For that reason, "a valid forum selection clause should be given controlling weight in all but the most exceptional cases." *Id.* (quotation and formatting omitted).

The Supreme Court instructs that the presence of a valid forum selection clause requires district courts to adjust their usual Section 1404(a) analysis in three ways:

> First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted …..
>
> Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum selection clause should not consider arguments about the parties' private interests. When parties agree to a forum selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum ….. As a consequence, a district court may consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the practical result is that forum selection clauses should control except in unusual cases.
>
> Third, when a party bound by a forum selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules ….

7

*Id.* at 581-83. "Thus, if there is a valid forum selection clause, then Plaintiffs bear the burden of showing exceptional circumstances unrelated to the convenience of the parties that make transfer inappropriate." *T&M Solar*, -- F.Supp.3d--, 2015 WL 1289497 at *7 (citing *Atlantic Marine*, 134 S.Ct. at 581).

The Supreme Court recognized that its analysis in *Atlantic Marine* "presupposes a contractually valid forum selection clause." *Id.* at 579 n. 5. In this case, Plaintiffs argue that the forum selection clause in the Braga Agreement is not valid. The court will address the legal standards for determining the validity of a forum selection clause below.

### III. DISCUSSION

Defendant argues that venue is improper in this district because the Braga Agreement requires that this case be litigated in a New York court, and thus moves to dismiss pursuant to Section 1406 and Rule 12(b)(3). Defendant also argues that this case should be transferred to New York under Section 1404(a) because New York is the more convenient forum.

#### A. Propriety of Venue in this District

Defendant offers two reasons why venue is not proper in this district. First, it argues that venue is proper only "in that judicial district which ordinarily would be most convenient to defendant." Mot. at 3. This misstates the law. Under Section 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." There is no dispute that a substantial part of the events giving rise to Plaintiffs' claims occurred in Oakland. Thus venue is proper under Section 1391(b)(2) for both Plaintiffs.

Second, Defendant argues that the choice-of-law and forum selection clause in the Braga Agreement "weighs on the venue decision." Mot. at 4. Defendant is incorrect. The provision in the Braga Agreement has no bearing on whether venue is proper in this district under 28 U.S.C. § 1391. *Atlantic Marine*, 134 S.Ct. at 577.

The court therefore **denies** Defendant's Rule 12(b)(3) motion to dismiss for improper venue.

**B.  Transfer of Venue under Section 1404(a)**

Defendant also moves the court to transfer this case to the Southern District of New York pursuant to Rule 1404(a). The court considers each Plaintiff separately, because a forum selection clause appears in a contract signed by Braga, but not in any contracts signed by Cottone.

### 1. Braga

The contract signed by Braga on February 5, 2013 states that it shall be governed by New York law and that "all disputes arising out of or in connection with this Agreement" must be submitted "to the exclusive jurisdiction of the state or federal courts located in New York County, State of New York." Plaintiffs contend that this forum selection clause is invalid, and therefore should not be considered by the court in determining whether to transfer Braga's case.

#### a. Validity of Forum Selection Clause

Federal law governs the validity of a forum selection clause. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). In the Ninth Circuit, "[a] forum selection clause is presumptively valid; the party seeking to avoid a forum selection clause bears a heavy burden to establish a ground upon which [the court] will conclude the clause is unenforceable." *Doe 1*, *supra* n. 1, 552 F.3d at 1083 (quotation omitted). *Accord M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972) (forum selection clauses "are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances").

A forum selection clause may be unenforceable if (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so "gravely difficult and inconvenient" that the complaining party will "for all practical purposes be deprived of its day in court"; or (3) enforcement of the clause would "contravene a strong public policy of the forum in which the suit is brought." *Bremen*, 407 U.S. at 12-13, 15, 18. *See also Doe 1*, 552 F.3d at 1083 ("[W]e will determine a forum selection clause is unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.") (quotation omitted).

##### i. Fraud, Undue Influence, or Overweening Bargaining Power

At the hearing, Plaintiffs clarified that they do not assert that the Braga Agreement is

9

1  unenforceable because of fraud, undue influence, or overweening bargaining power.  Instead,

2  Plaintiffs contend that the Braga Agreement misclassifies Braga as an independent contractor

3  when she was actually an employee of Defendant.  Plaintiffs argue that this error invalidates the

4  entire Braga Agreement, including the forum selection clause.  It is hard to see how a finding of

5  misclassification would result in voiding the entire contract.  But in any event, Plaintiffs put the

6  proverbial cart before the horse, for their argument assumes the answer to the question at the heart

7  of this case—whether Defendant misclassified Braga as an independent contractor as

8  memorialized in the Braga Agreement.  That issue will have to be decided on the merits.

### ii. Grave Difficulty or Inconvenience

Plaintiffs also contend that it would be gravely difficult or inconvenient to litigate Braga's claims in New York.  In her declaration, Braga attests to the following uncontroverted circumstances:

> I have limited means and cannot afford to litigate across the country in New York.  I am currently unemployed.  Since Defendant classified me as an independent contractor and terminated me, I have been unable to collect unemployment insurance.  I am living off of my savings, which is almost exhausted.  I cannot afford to fly back and forth to New York and pay for meals and lodging several times.  The only reason I was able to bring this action at all was because my attorney agreed to take my case on a contingent-fee basis.

Braga Decl. at ¶ 10.

Braga's current financial circumstances are insufficient to show that enforcement of the forum selection clause would essentially deprive her of her day in court.  Braga states that she is "currently unemployed," and living on her savings.  However, nothing suggests that her financial situation cannot improve, nor does she point to other barriers to litigating in New York.  "Although it is a compelling reason to deny transfer, financial hardship, alone, is insufficient to deprive an individual of his day in court."  *Samain v. Advent Prod. Dev.*, No. EDCV 08-980VAP(PLAX), 2008 WL 4501497, at *3 (C.D. Cal. Sept. 30, 2008) (finding forum selection clause enforceable despite plaintiff's concern that as an unemployed resident of California, it would be financially impossible for him to litigate a matter in South Carolina).  *Compare Murphy*

*v. Schneider National, Inc.*, 362 F.3d 1133 (9th Cir. 2003) (litigant could establish that he would be deprived of his day in court where he was no longer able to work due to an accident, he and his spouse lived on disability payments and had no disposable income, and their physical disabilities prevented them from driving to the transferee forum); *Walker v. Carnival Cruise Lines*, 107 F. Supp. 2d 1135 (N.D. Cal. 2000) (finding plaintiffs' physical disabilities and economic constraints so severe that, in combination, they would preclude plaintiffs from having their day in court).

### iii. Contravention of Public Policy

A contractual forum selection clause may be "unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000) (quoting *Bremen*, 407 U.S. at 16). Plaintiffs contend that the forum selection clause is invalid because it contravenes California's fundamental and well-established "public policy in favor of full and prompt payment of an employee's earned wages." *Smith v. Superior Court*, 39 Cal.4th 77, 82 (2006) (quotation omitted). Plaintiffs argue that if this court transfers the case to a New York federal court, the New York court would then use New York state law to determine whether the choice-of-law provision is enforceable.[6] Should the New York court ultimately decide to apply New York substantive law, Plaintiffs argue that Braga's rights would be diminished because New York's wage and hours laws are less favorable to employees than California's, and in some cases California permits causes of action that New York does not.

Specifically, Plaintiffs argue that: (1) Braga would lose a portion of her claim for overtime wages because employees in California are entitled to overtime for working over eight hours per day, whereas New York employees must have worked more than forty hours in a week; (2) New York does not create a cause of action for failure to provide accurate wage statements or for

---

[6] Where a federal court exercises diversity jurisdiction over an action pursuant to 28 U.S.C. § 1332, it applies the law of the forum state to determine whether to enforce the parties' contractual choice-of-law provision. *See Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). *See also Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*, 40 F. Supp. 3d 1191, 1196 (N.D. Cal. 2014) (federal court in California sitting in diversity jurisdiction applies California law to determine whether to enforce choice-of-law provision in contract).

11

1   waiting time penalties, so Braga could not bring those claims; (3) Plaintiffs "cannot find any New
2   York law" that provides for penalties for willful misclassification of employees like California's
3   laws provide; (4) New York's laws against retaliation are not as extensive as California's; (5) and
4   "New York does not authorize PAGA claims for California Labor Code violations." Opp. 15-19.
5         Such claims would only arise if Braga were found to be an employee rather than an
6   independent contractor. The test of employment is somewhat similar under California and New
7   York law, for both employ a multi-factor test, but focus primarily on the question of employer
8   control. *Compare O'Connor v. Uber Technologies, Inc.*, __ F. Supp. 3d __, No. 13-cv-3826-
9   EMC, 2015 WL 1069092, *4-6 (N.D. Cal. March 11, 2015) (under California law, among a
10  number of factors, "[t]he 'most significant consideration' is the putative employer's 'right to
11  control work details.'") *with Hart v. Rick's Cabaret International, Inc.*, 967 F. Supp. 2d 901, 922
12  (S.D.N.Y 2013) (New York law examines a number of factors to determine "'the critical inquiry'"
13  which "'pertains to the degree of control exercised by the purported employer over the results
14  produced or the means used to achieve the results.'") However, California law is more protective
15  of workers in one important regard: under California law, a person who provided services for an
16  employer is *presumed* to be an employee, and the employer bears the burden of proving
17  otherwise.[7] *See, e.g., O'Connor*, 2015 WL 1069092 at *4.
18        Defendant offers no reply to Plaintiffs' argument that transfer could lead to a contravention
19  of a strong public policy. Instead, Defendant simply argues that "the New York court can parse
20  the claims and apply the proper legal standards for each act or wrong and each remedy or right."
21  Reply at 7.
22        The Ninth Circuit has provided sparse guidance on how to determine whether a forum
23  selection clause should be invalidated as contravening public policy. In *Jones*, the defendant
24  franchisor moved to transfer a California franchisee's lawsuit to Pennsylvania pursuant to a forum

---

[7] Unlike California law, New York law does not provide a general presumption that a worker is an employee rather than an independent contractor, although such a presumption does apply for workers in certain enumerated industries. *See, e.g.*, N.Y. Lab. Law § 511(1)(b)(1-a)–(1-c) (presumption that professional musicians, construction industry workers, and workers in the commercial good transportation industry are employees).

1    selection clause in the franchise agreement. The Ninth Circuit found the forum selection clause
2    invalid because California law expressly invalidates forum selection clauses that require California
3    franchisees to litigate claims arising under franchise agreements in states other than California.
4    211 F.3d at 497-98.

5    More recently, in *Doe 1*, the Ninth Circuit refused to enforce a forum selection clause
6    because proceeding in the forum selected (Virginia state court) under the choice-of-law provision
7    (selecting Virginia law) would force plaintiffs to waive both their right to proceed as a class action
8    and to receive enhanced remedies under the California's Consumers Legal Remedies Act
9    ("CLRA"), which has a provision preventing the waiver of its protections. *Doe 1*, 552 F.3d at
10   1084-85. The Ninth Circuit recognized that the California Court of Appeal specifically found that
11   enforcement of an identical forum selection clause would violate California's strong public policy
12   in favor of allowing class actions and against waiver of protections provided under the CLRA. *Id.*
13   at 1083 (referring to *America Online, Inc. v. Superior Court of Alameda County* [*Mendoza*], 90
14   Cal.App.4th 1 (2001)). Because it was judicially determined that enforcement of the forum
15   selection clause would violate California public policy, the Ninth Circuit held that the clause was
16   unenforceable. In reaching this conclusion, the Ninth Circuit noted that in *Mendoza*, the "state
17   Court of Appeal held the forum selection clause, together with the choice-of-law provision, effect
18   a waiver of statutory remedies provided by the CLRA" and contradicted California's consumer-
19   protection public policies. *Id.* at 1084.

20   The court must first address the question of whether it is appropriate to consider choice of
21   law issues when deciding whether to enforce a forum selection clause. One court in this district
22   has ruled that "the Court *can* consider the combined effect of forum selection and choice of law
23   clauses." *Bayol v. Zipcar, Inc.*, No. 14-CV-02483-TEH, 2014 WL 4793935, at *2 (N.D. Cal. Sept.
24   25, 2014) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637
25   n.19 (1985), and *Doe 1*, 552 F.3d at 1084) (emphasis in original). The majority of courts choose
26   not to consider choice-of-law in deciding whether to enforce a forum selection clause, but these
27   courts do not reach the question of whether a court is *permitted* to do so. *See, e.g., Rowen v.*
28   *Soundview Comm'ns,* No. 14-cv-5530-WHO, 2015 WL 899284 at *4 (N.D. Cal. March 2, 2015)

1  ("Courts in the Ninth Circuit have generally agreed that the choice-of-law analysis is irrelevant to
2  determining if the enforcement of a forum selection clause contravenes a strong public policy.";
3  collecting cases). Thus, as noted by *Bayol*, "[r]egardless of whether [courts] *may* consider the
4  effect of a choice of law clause, courts in this district have taken differing approaches to the
5  question of whether they *should* consider that effect. *Bayol*, 2014 WL 4793935 at *2. (emphasis
6  in original).

7        Courts that have refrained from analyzing a choice-of-law provision in tandem with a
8  forum selection clause have expressed reluctance to engage in speculation about how the
9  transferee court would apply its choice-of-law analysis. *See, e.g., Besag v. Custom Decorators,*
10  *Inc.*, No. CV08-05463 JSW, 2009 WL 330934, at *4 (N.D. Cal. Feb. 10, 2009) ("Indirect attacks
11  based on what substantive law will ultimately apply to a party's claims … require courts to
12  speculate as to the potential outcome of the litigation on the merits in the transferee forum and to
13  consider whether that outcome would conflict with a strong public policy of the transferor forum
14  at the outset of the action.") (citation omitted); *Hartstein v. Rembrandt IP Solutions, LLC*, No. 12-
15  2270 SC, 2012 WL 3075084, at *5 (N.D. Cal. July 30, 2012) (rejecting plaintiff's argument that
16  forum selection clause was unenforceable because transfer to Pennsylvania court would require
17  application of substantive Pennsylvania law which would conflict with California public policy,
18  because "[t]he plaintiff's analysis would unduly complicate the analysis of this issue in future
19  cases. If the Court adopted plaintiff's argument, each court presented with a forum selection
20  clause issue would be forced to make a determination of the potential outcome of the litigation on
21  the merits in the transferee forum and to consider whether that outcome would conflict with a
22  strong public policy of the transferor forum….[I]t would become complicated and uncertain in
23  cases involving complex legal questions or voluminous amounts of disputed issues of fact. Thus,
24  each Court presented with the issue would be involved in detailed speculation on the merits at the
25  outset of the action."); *East Bay Women's Health, Inc. v. gloStream, Inc.*, No. C 14-00712 WHA,
26  2014 WL 1618382, at *3 (N.D. Cal. April 21, 2014) ("[P]laintiffs' argument that Michigan state
27  laws might provide them with less protection than California's Unfair Competition Law is
28  unavailing….plaintiffs are free to argue to the transferee court that California state law ought to

14

apply, but this order declines to speculate how such an argument will be received.").

However, other courts have found it appropriate to consider the operation of a forum selection clause in tandem with a choice-of-law clause when determining whether enforcing a forum selection clause will contravene the public policy of the forum state. *See Bayol*, 2014 WL 4793935; *Perry v. AT & T Mobility LLC*, No. C 11-01488 SI, 2011 WL 4080625 (N.D. Cal. Sept. 12, 2011).[8]

In *Perry*, as here, the plaintiff alleged that the defendant had wrongfully classified her as an independent contractor and brought claims for failure to pay minimum wages and overtime wages and claims under the PAGA. *Perry*, 2011 WL 4080625 at *1. The *Perry* plaintiff had signed an agreement containing both a forum selection clause and a choice-of-law clause requiring litigation in Florida courts applying Florida law. *Id.* The court found that "[w]here a state prohibits the prospective waiver of the remedies provided for in the statute that a plaintiff is trying to enforce, a court may consider whether choice-of-forum and choice-of-law clauses 'operate[ ] in tandem as a prospective waiver of a party's right to pursue statutory remedies' when deciding whether a forum selection clause is unenforceable as against the strong public policy of that state." *Id.* at *4 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 637 n. 19 (1985)). Under the facts of that case, the *Perry* court found that "the enforceability of the forum selection clause cannot be divorced from the choice of law question." *Id.* at *4. Citing *Gentry v. Superior Court,* 42 Cal. 4th 443 (2007), the *Perry* court recognized that "the California Supreme Court has held clearly and unequivocally that it is against the strong public policy of California to enforce a forum selection clause where the practical effect of enforcement will be to deprive a plaintiff or class of plaintiffs their unwaivable statutory entitlement to the minimum wage and overtime payments." *Id.* at *5. *Perry* then reviewed differences between Florida and California employment law, and concluded that such differences "could well have the practical

---

[8] Plaintiffs urge the court to consider a recent California appellate case in which the court considered the operation of a choice-of-law provision when determining whether to enforce a forum selection clause. *See Verdugo v. Alliantgroup, L.P.*, 187 Cal.Rptr.3d 613, 237 Cal.App.4th 141 (2015). However, that case is inapposite because it applies California law to determine the validity of the forum selection clause, whereas in a diversity jurisdiction case such as this one, federal law governs the validity of a forum selection clause.

effect of depriving plaintiff of her unwaivable statutory entitlement to minimum wage and overtime payments." *Id.* The court therefore found that plaintiff met her heavy burden of proving that enforcement of the forum selection clause in this case would contravene the strong public policy of California. *Id.* at *7.

In *Bayol*, plaintiffs brought a putative class action challenging Zipcar's late fee policies. Zipcar sought to enforce a forum selection clause in its membership agreement requiring all disputes to be resolved in the state or federal courts of Massachusetts. *Bayol*, 2014 WL 4793 at *1. The agreement also included a choice-of-law provision requiring disputes about the agreement to be governed by the laws of Massachusetts. *Id.* The *Bayol* court noted the likelihood that a Massachusetts federal court would apply Massachusetts' lenient choice-of-law rules and uphold the choice-of-law provision, and then concluded that application of Massachusetts substantive law to the case would foreclose the plaintiffs' claims for certain unwaivable remedies of the CLRA. *Id.* at * 4. Thus the court concluded that enforcement of the forum selection clause would contravene California's strong public policies as expressed in the CLRA, and declined to enforce the clause. *Id.* at *5.

This court joins *Perry* and *Bayol* in ruling that the Ninth Circuit permits a court to consider whether a forum selection clause is invalid because, together with a choice-of-law provision, it would effect a waiver of rights resulting in the contravention of a strong public policy. *Doe 1*, 552 F.3d at 1084. However, this court also recognizes the wisdom in declining to do so, at least in certain circumstances, because it would result in layers of speculation about what a sister court might or might not do. Such speculation also preempts the everyday work of federal and state courts that are charged with applying choice-of-law principles.

In this case, the court is struck by the fact that Defendant has offered absolutely no rejoinder to Plaintiffs' public policy arguments. Through its silence, Defendant concedes the point.[9] Plaintiffs argue that enforcement of the forum selection clause, coupled with the operation

---

[9] Defendant's silence also raises a concern that its forum selection clause and choice-of-law provision are in reality "a contractual scheme[] to avoid the California Labor Code [that] will not be tolerated." *Quinonez v. Empire Today, LLC*, No. C 10-02049 WHA, 2010 WL 4569873, at *2 (N.D. Cal. Nov. 4, 2010).

of the choice-of-law provision, would result in application of New York law and an effective waiver by Braga of certain unwaivable rights, such as California's statutory entitlement to overtime payments for hours worked in excess of eight per day, (*Gentry*, 42 Cal. 4th at 455), and the right to bring a PAGA action. *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 384 (2015) ("These statutes compel the conclusion that an employee's right to bring a PAGA action is unwaivable.").[10] Braga also argues that she would be unable to pursue other California statutory claims that do not exist under New York law. Plaintiffs' showing, coupled with Defendant's silence, satisfies the heavy burden of proving that enforcement of the forum selection clause in this case would contravene the strong public policies, enunciated by California's highest court, regarding the preservation of unwaivable rights to overtime pay and to bring a PAGA action.

### b. Other Section 1404(a) Considerations

Because Braga's claims are not governed by a valid forum selection clause, the district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quotations omitted). Factors that the court may consider include: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). The relevant public policy of the forum state is also "a significant … factor in the § 1404(a) balancing." *Id.* at 499.

---

[10] Where a plaintiff raises claims based on unwaivable rights, courts have opted to consider whether a forum selection clause is unenforceable as against public policy because the combined effect of the forum selection clause and the choice-of-law provision results in the loss of those claims. *See Bayol*, 2014 WL 4793 at *3. It is unclear whether courts have considered the combined effect of a forum selection clause and a choice-of-law provisions when the plaintiff asserts claims based on *waivable* rights.

1  "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's

2  choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.

3  1986).

4        The above factors are neutral or weigh against transferring Braga's claims to a New York

5  court.  First, it is unclear where Braga and Defendant negotiated or entered into the Braga

6  Agreement, and whether they ever entered into any other agreements.  Second, this court is

7  confident that any federal court can comprehend and apply the law of either state, a task which

8  federal courts are routinely required to do.  Third, Plaintiffs have chosen this district, which is

9  proper under the laws of venue.  The fourth and fifth considerations weigh against transferring

10  Braga's claims, since both Braga and Defendant have had ample contact with this forum; Braga's

11  work was conducted in large part in Oakland and Defendant maintained an office and a residence

12  and employed numerous workers in the Bay Area.  With respect to the sixth, seventh, and eighth

13  considerations, it will be more costly and difficult for both parties if litigation is conducted in New

14  York, since the majority of witnesses likely reside in California.  Against this, the only

15  consideration weighing in favor of transfer is that Defendant is incorporated in New York (though

16  it operates in California and New York), and one of its co-owners lives in New York (though the

17  other lives in California), which could mean that litigating in California would be more expensive

18  for Defendant than litigating in New York.

19        The court finds that Defendant has failed to make the strong showing of inconvenience

20  necessary to upset Braga's choice of a California federal court, and that on balance transfer of

21  Braga's claims to New York would not serve the convenience of the parties and promote the

22  interest of justice.  Accordingly, the motion to transfer venue is **denied** as to Braga.

23        **2.**    **Cottone**

24        The considerations regarding the transfer of Cottone's claims to another federal court are

25  similar to those for Braga's claims.  The considerations weighing against transfer are that Cottone

26  chose this forum, which is proper under the laws of venue; the majority of his employment and the

27  events that form the basis of this claims occurred in Oakland; Defendant had employees, an office,

28  and an apartment in this district during the relevant time period; and many of the witnesses and

much of the evidence is likely to be found in this district. The only consideration weighing in favor of transfer is that Defendant is incorporated in New York. The court finds that, on balance, transfer of Cottone's claims to New York would not serve the convenience of the parties and promote the interest of justice. Accordingly, the motion to transfer venue is **denied** as to Cottone.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to transfer venue is **denied**. The Initial Case Management Conference is set for August 26, 2015 at 1:30 p.m. A joint Case Management Statement is due no later than August 19, 2015.

**IT IS SO ORDERED.**

Dated: July 31, 2015

_____
Donna M. Ryu
United States Magistrate Judge